ELWIN MURRAY, A MINOR, BY LOUIS MURRAY, HIS FATHER AND NATURAL GUARDIAN AND NEXT FRIEND, APPELLEE, V. PEARSON APPLIANCE STORE ET AL., APPELLANTS.

54 N. W. 2d 250

Filed June 20, 1952. No. 33012.

*Maupin & Dent,* for appellants.

*V. H. Halligan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,. YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Elwin Murray, a minor, by Louis Murray, his father and natural guardian and next friend, brought this action in the district court for Lincoln County against Pearson Appliance Store, Herbert R. Pearson, and Rollo Harvey. The purpose of the action is to recover for personal injuries and property damage suffered in a truck-car accident. The basis for recovery is that defendant Harvey was negligent in operating a truck owned by defendant Pearson, who is doing business under the trade name of Pearson Appliance Store, and that such negligence was the proximate cause of the accident which resulted in plaintiff's damages. By the time the action was tried the plaintiff had reached maturity and the case proceeded to trial in his name. The jury returned a verdict for the plaintiff on both counts. An alternative motion for either a judgment notwithstanding a verdict or for a new trial was filed and overruled and judgment entered on the verdict. The defendants appeal therefrom.

Appellants contend their motion for a judgment notwithstanding the verdict should have been sustained for the reason that appellee's evidence shows he was guilty of contributory negligence which was more than slight and sufficient, as a matter of law, to defeat his right to recover.

In this respect we have said: "When the court can say, as a matter of law, that the plaintiff is guilty of negligence that is more than slight as compared with that of the defendant and that such negligence is a proximate cause of the accident then the court should direct a verdict for the defendant and dismiss the action." Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

The evidence is not in dispute as to the following:

Appellant Pearson operated a store in Wallace, Nebraska, under the trade name of Pearson Appliance Store. While this business was primarily engaged in selling electrical appliances and machines it also sold propane gas. For the purpose of delivering this latter product Pearson owned and operated a two-ton Studebaker truck with a bulk propane gas tank. Pearson had in his employ the appellant Harvey and Wilbur Owens. They operated the store in Wallace.

Appellee, Elwin Murray, lived in Wallace and was engaged in farming and ranching with his father. Their operations were located some three miles east and one-half mile south of Wallace and their livestock consisted of some 45 head of cattle. Appellee was in sole charge of this livestock at the time of the accident as his father was at that time in California. There was no one staying at the place where these cattle were being kept. The cattle consisted mostly of stock cows but did include a few milk cows. Appellee owned a 1947 Studebaker five-passenger coupé which he used in going to and from the place where the cattle were kept.

Dickens, Nebraska, is some nine or ten miles east of Wallace and located on Highway No. 23, which is a graded and graveled road. About 9 p. m. on Sunday evening, January 2, 1949, snow began to fall at Wallace. By Monday morning it had become a blizzard. Early that morning, about 2 a. m., a customer near Dickens called the Pearson Appliance Store and asked them to deliver some propane gas. This Harvey and Owens attempted to do. They used the Studebaker truck for this purpose and put chains on the rear dual wheels before starting. When loaded this truck weighs between six and seven tons. They left Wallace about 8 a. m. but after getting within about three miles of Dickens the weather conditions caused them to turn around and return to Wallace. The wind was blowing from the northeast. On their return, at a point about one-half mile south and one and one-half miles east of Wallace

on Highway No. 23, just as the truck was coming out of a snowdrift which was across the highway, the truck collided with appellee's coupé. The accident happened about the middle of the forenoon.

Appellee, on Monday morning, because of the weather conditions, decided to go out and look after the livestock he and his father owned. He used his car for that purpose. He first went south one-half mile and then turned east on Highway No. 23. After he had gone east about a mile and a half his coupé collided with the Pearson truck, the left-front wheel and fender of the car striking the left-front wheel and fender of the truck. After the collision the car was standing upright, but at an angle, on the south edge of the highway. It was partly in the ditch. Its left-front wheel was on the graded and graveled surface, its right-front wheel was off the graded and graveled surface, but on the shoulder, and its rear wheels were in the ditch. At this point the slope of the shoulder into the ditch is very gradual.

Appellee testified that he was driving his coupé without chains; that he was familiar with the road, having driven it many times; that while driving south out of Wallace for a distance of a half mile he had some visibility; that after turning east on Highway No. 23 his visibility was zero; that he could not see ahead; that he put his car in low and drove about five miles an hour; that, in order to be able to proceed, he rolled down the glass in the right door of his coupé, sat on the right side of the front seat which was wide enough for three people, and put his head out of the opening in the door and looked down to see the edge of the gravel; that he guided the car by aligning it with the edge thereof, keeping it about a foot and a half therefrom; that some 100 to 150 yards from the place of the accident there was some snow drifted across the road; that just before the accident he heard his tires starting to creak like they might be rolling into a snowdrift; that

he thereupon pulled his head into the car and started to put on the brakes; that the impact occurred; that the impact occurred after he had traveled east about a mile and a half; that at the place of impact the road was straight and level; that he never saw the truck before the impact; that his head went through the right front of his windshield; that his car was at all times on the right side of the center of the graveled and graded portion of the road; that after the impact the truck was right in front of him; and that before it could go forward it had to back up a little to get around the front end of his car.

Appellant Harvey, who was driving the truck, and his fellow employee Owens, who was riding with him, testified that after they turned around to return to Wallace they had some visibility as they were traveling with the storm; that as they approached a point just east of where the accident occurred they came to snow that was drifted across the highway; that this snow had drifted as deep as two and one-half feet; that in an endeavor to get through this snow they put the truck in compound underdrive which did not permit a speed in excess of five miles an hour; that while trying to get through this drift they had no visibility; that while driving through the drift they did not know where the truck was with reference to the center of the road; that on the third effort they broke through the drift; that just as they broke through the drift their vision improved a little and they saw appellee's car coming toward them; that it was some 15 to 20 feet away; that they saw it in the glare of their lights, which were turned on; that the car did not have its lights burning; that the windshield of the car was completely covered with frost, ice, and snow; that Harvey hit the brakes and endeavored to turn right; that he could not turn right because they were still in the snow, the front wheels in eight or ten inches thereof and the rear wheels in the deeper part of the drift; that the impact

occurred almost immediately; that the truck stopped almost immediately, moving forward only a foot or two; that the car rebounded from the impact and went back in sort of a semicircle or arc, ending up almost off the graded and graveled portion of the road; that the car and truck were between 15 and 25 feet apart after the collision; that the truck was north of the center of the road when it came to rest; that Harvey drove it straight forward alongside the car to pick up appellee and take him to Wallace; and that the truck had been north of the center of the graded and graveled portion of the highway.

The facts of this case do not present an emergency situation where either party was caught out in a storm and was endeavoring to get to shelter. Both parties drove out into it. Each had the right to do so but, of course, if negligent while doing so each will be held responsible for his own conduct. As stated in Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569: " 'Users of the highway are required to exercise reasonable care. What is reasonable care must, in each case, be determined by its own peculiar facts and circumstances.' McClelland v. Interstate Transit Lines, supra. See, also, Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491; Lammers v. Carstensen, 109 Neb. 475, 191 N. W. 670."

In this respect we have said: "On principle it would appear that the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287." Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315.

" '* * * where the vision of the driver of an auto-

mobile is obscured whether by the lights of an approaching car, fog, smoke or for any other reason, it is his duty to stop until visibility is restored, or to reduce his speed and have his car under such control that he can stop immediately if necessary. French v. Nelson, 111 Vt. 386, 391, 17 A. 2d 323; Powers v. Lackey, 109 Vt. 505, 507, 1 A. 2d 693; Palmer v. Marceille, 106 Vt. 500, 508, 175 A. 31; Steele v. Fuller, 104 Vt. 303, 311, 312, 158 A. 666.'" Price v. State Highway Commission, 62 Wyo. 385, 167 P. 2d 309, quoting from Taylor v. Quesnel, 113 Vt. 36, 29 A. 2d 812.

Negligence has been defined: "'Negligence is the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do.' McGraw v. Chicago, R. I. & P. R. Co., 59 Neb. 397, 81 N. W. 306." McClelland v. Interstate Transit Lines, 142 Neb. 439, 6 N. W. 2d 384.

The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance.

As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision. See, Buresh v. George, *supra;* Huston v. Robinson, 144 Neb. 553, 13 N. W. 2d 885.

The basis for this rule is stated in Buresh v. George, *supra,* as follows: "The basis of this rule is that a driver of an automobile is legally obligated to keep

such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it."

Under these principles the appellee was undoubtedly guilty of negligence in driving his car but negligence alone is not sufficient to prevent recovery. It must contribute to the injury complained of as a proximate cause. This principle is stated in Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394: "Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause."

" ' "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Spratlen v. Ish, 100 Neb. 844, 161 N. W. 573. See, also, Williams v. Hines, 109 Neb. 11, 189 N. W. 623, and Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117.' Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501. See, also, Bixby v. Ayers, supra; Johnson v. Mallory, 123 Neb. 706, 243 N. W. 872." Stark v. Turner, *supra*.

There is evidence from which a jury could find that appellee's car was at all times being driven on the right-hand side of the highway and that the accident happened there. If that is true then if the truck had been on its right side of the highway the accident would not have happened. Under such circumstances it would appear that the negligence of appellee in driving blind would not necessarily have been a proximate cause of the injury.

We realize that several jurisdictions have held to the

contrary and have said that blind driving prevents recovery no matter how the accident happens although some of these cases are clearly distinguishable from this case by reason of a material difference in the facts on which the conclusion is based. However, we think to say such is true in every case would be an improper application of the principle of contributory negligence. If it can be said, without question, that the accident happened because thereof then it presents a question of law for the court but otherwise one of fact for the jury. We think the latter is true here. See Crowe v. O'Rourke, 146 Wash. 74, 262 P. 136.

As stated in Baden v. Globe Indemnity Co. (La.), 146 S. 784:

"The evidence, in our opinion, preponderates in favor of the contention that the Johnson car was on its proper side of the road, and that the Baden car was at least partly on Johnson's side of the road.

"In view of these conditions, the rate of speed of the Johnson car and the absence of lights therefrom, or inefficient lights thereon, cease to be of primary importance to a correct determination of the question of responsibility for the accident, for certainly there would have been no collision, notwithstanding the negligence on part of Johnson, had the Baden car, equipped with bright lights, maintained its side of the highway. The efficient and proximate cause of the accident was the contributing negligence of Baden in failing to observe his own duty at the time."

Appellants contend the court erred when it included in its instruction on what the jury could consider in assessing the amount of damages the following: "The measure of damage for personal injuries is that amount which will fairly and reasonably compensate plaintiff for * * * reasonable medical or other expense incurred on account of said injuries." This contention is based on the fact that appellee introduced no evidence as to

the amount of such expenses incurred or the reasonable value thereof.

In his petition appellee alleged: "* * * plaintiff has suffered doctors', hospital and medical expenses and personal injury totaling the sum of Five Thousand Dollars * * *."

The evidence introduced shows in detail the appellee's need for medical care and hospital attention because of the injuries he received in the accident and that such services were rendered and the extent thereof but no evidence was introduced to show any amount of liability appellee had incurred by reason thereof nor to show the reasonable value thereof. In other words, if the jury included any amount for medical or other expenses incurred on account of the injuries suffered it would have had to have based its decision on speculation or guess as there is nothing in the evidence on which it could base it.

" 'Where there are elements of damage, such as expenditures, capable of pecuniary measurement, the law requires the amount shall be proved.' " Library Board v. Ohlsen, 110 Neb. 146, 193 N. W. 110, quoting from North Chicago Street R. R. Co. v. Fitzgibbons, 180 Ill. 466, 54 N. E. 483.

The following discussion found in Reed v. C., R. I. & P. R. Co., 57 Iowa 23, 10 N. W. 285, is applicable here. Therein the court, in discussing a similar problem, said: "The court directed the jury that if they found that plaintiff was entitled to recover, they should among other damages allow for 'expenses reasonably incurred for medical care and attention.' Of course upon proper evidence showing the amount, or proximate amount, of these expenses, plaintiff would be entitled to recover them. But there is not one word in the evidence upon which an estimate can be based of their amount. The testimony shows that plaintiff was treated by a physician three or four times and that he procured medicine for his injuries. The value of these medical services and

medicines are not attempted to be shown in any manner and their extent and character are no more definitely shown in the testimony than in the statement we have just made. Under the instruction in question the jury were directed to include compensation for medical services in their verdict. They doubtless would feel authorized to determine the amount to be allowed therefor according to their own judgment without aid of evidence. But the law cannot be administered in this uncertain way. Damages of this kind cannot be found by the jury except upon proof. It will not do to say that the amount of damages allowed by the jury may have been small. We can know nothing about the amount and if we could know it to be insignificant, we could not relieve this case from the operation of the familiar rules of law which require damages of the character of those under consideration to be established by proof. For the error pointed out the judgment of the District Court must be REVERSED."

When the question has come up the courts seem to be uniform in so holding. See, Hobbs v. City of Marion, 123 Iowa 726, 99 N. W. 577; Cousins v. Lake Shore & M. S. Ry. Co., 96 Mich. 386, 56 N. W. 14; Little Rock & M. R. R. Co. v. Barry, 58 Ark. 198, 23 S. W. 1097, 25 L. R. A. 386; Gibler v. Terminal R. R. Assn., 203 Mo. 208, 101 S. W. 37; Smith v. Whittlesey, 79 Conn. 189, 63 A. 1085; Chicago, St. L. & P. R. R. Co. v. Butler, 10 Ind. App. 244, 38 N. E. 1; Consolidated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132; Olson v. Erickson, 53 Wash. 458, 102 P. 400; Brown v. White, 202 Pa. 297, 51 A. 962, 58 L. R. A. 321; Willis v. Barber, 280 Ky. 417, 133 S. W. 2d 551.

Appellants complain of instruction No. 4 given by the court and contend it is erroneous in several respects. We will therefore set out the instruction in full. It is as follows:

"If you find from the evidence that defendants' negligence was the proximate cause of injury to the person or

property of the plaintiff, you will next consider the affirmative defense that plaintiff's own negligence formed a part of the proximate cause of said collision. The burden of proof is upon the defendants to prove the material allegations of such defense. Such material allegations are stated to you in three propositions, to-wit:

"(1) That at the time of or immediately prior to said collision, the plaintiff was negligent in one or more of the following respects:

"(a) That he negligently drove on the left-hand side of said highway.

"(b) That he negligently failed to maintain a proper lookout for other vehicles.

"(c) That he negligently failed to maintain proper control over the operation of his vehicle.

"(2) That such negligent act or omission formed such a part of the proximate cause of said collision that said collision would not have occurred but for such negligent act or omission.

"(3) That after weighing and comparing the negligence of each party with that of the other, you find either one of the following statements to be true:

"(a) That the negligence of plaintiff was more than slight in comparison with the negligence of defendants.

"(b) That the negligence of defendants was less than gross in comparison with the negligence of plaintiff.

"If you are satisfied by a preponderance of the evidence that each and all of the foregoing propositions are true, you will find for the defendants and so state in your verdict.

"If the evidence is evenly balanced or preponderates in favor of the falsity of any one of said three propositions, you will find against the defendants upon their affirmative defense and proceed to compute the amount of damage suffered by the plaintiff.

"If you should find Propositions 1 and 2 of this instruction in favor of defendants, but Proposition 3 against defendants, you will bear in mind the compar-

ison made by you and apply the same to the computation of damages as you are hereinafter instructed."

Appellants complain of this instruction because it did not properly submit the defendants' burden of proving contributory negligence. They claim the instruction should have been so worded as to give them the benefit of appellee's evidence.

The rule in this regard is as follows: "If the defendant pleads that the plaintiff was guilty of contributory negligence the burden is upon him to prove that defense and this burden does not shift during the trial of the case. However, if the evidence adduced by the plaintiff tends to prove that issue the defendant is entitled to receive the benefit thereof and the court must instruct the jury to that effect." Mundy v. Davis, *supra*. See, also, Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839.

It will be noted the instruction submitted the issue of contributory negligence in the following language: "The burden of proof is upon the defendants to prove the material allegations of such defense." While appellee testified that he drove his car on the right side of the road at all times there are facts and circumstances in his evidence which the jury could properly consider in deciding the question of whether or not appellee was actually guilty of contributory negligence. The appellants were entitled to an instruction on this issue which would give them the benefit thereof.

Appellants further complain because they feel this instruction places on them too great a burden by requiring them to prove all of the alleged grounds of negligence of which they complain the appellee is guilty. We do not think the instruction has that effect. It is true that this instruction provides that appellants must establish, by a preponderance of the evidence, that "each and all of the foregoing propositions are true," but this language does not refer to the separate acts of negligence of which appellants complain the appellee is

guilty. It refers to the three propositions contained in the instruction which are negligence, proximate cause, and comparative negligence. The language in this instruction actually referable to the separate acts of negligence complained of is found in proposition "(1)." It is as follows: "That * * * the plaintiff was negligent in one or more of the following respects: * * *." We think this language properly submitted this phase of the issue of contributory negligence.

Appellants' next complaint is that proposition "(3)", contained in this instruction, did not correctly submit the doctrine of comparative negligence. They contend it is not a proper statement thereof.

The rule is: If plaintiff is guilty of negligence directly contributing to the injury he cannot recover, even though defendant was negligent, unless his contributory negligence is slight and the negligence of defendant is gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery.

When plaintiff is entitled to recover under this rule it then becomes the duty of the jury to deduct from the total amount of any damages which it determines he has sustained such an amount as his contributory negligence bears to the entire negligence of the parties which contributed thereto. Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N. W. 158, as clarified by Sgroi v. Yellow Cab & Baggage Co., Inc., 124 Neb. 525, 247 N. W. 355; Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704.

"Under the comparative negligence law, section 25-1151, R. S. 1943, the words 'slight' and 'gross' as therein used are comparative terms and the intent of the statute

is that the negligence of the parties will be compared one with the other in determining questions of slight and gross negligence." Roby v. Auker, 151 Neb. 421, 37 N. W. 2d 799.

We think this instruction is confusing because it places a burden of proof on the appellants with reference to the making of such comparison. After the parties establish and the jury, under proper instructions, finds the respective parties guilty of actionable negligence and contributory negligence the responsibility is then on the jury to make the comparison as contemplated by the statute. This comparison is to determine the rights of the parties to recover, if at all, and the extent thereof. In this respect there is no burden of proof on either party but solely a duty on the part of the jury to make the proper comparisons on the evidence before them. The court should give the jury an instruction in which the correct basis for making the comparison is set forth.

In view of what has been said a new trial should have been granted. We therefore vacate and set aside the verdict and judgment of the trial court and grant a new trial.

REVERSED AND REMANDED.